UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ABDUL MUHAMMAD,

        Plaintiff,

vs.

ADAM SALYERS, et al.,

        Defendants.

Case No. 1:12-cv-379

Judge Dlott
Magistrate Judge Bowman

**REPORT AND RECOMMENDATION**

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 against defendants Adam Salyers, Joshua Gregory and Michael Barney alleging a violation of his constitutional right to be free from excessive force in violation of the Eight Amendment's Cruel and Unusual Punishment clause while he was incarnated at Ohio River Valley Juvenile Correctional Facility ("ORVJCF"). (Doc. 1). At all times relevant to his action, Defendants served as Youth Specialists in the employ of the ORVJCF. This matter is before the Court on Defendants' motion for summary judgment (Doc. 33) and the parties' responsive memoranda. (Docs. 35, 36).

### I.    Background and Facts

On January 4, 2011, Plaintiff Abdul Muhammad was in custody at ORVJCF. (Doc. 32 Muhammad Dep. 8:14–20 (Sept. 6, 2013)). During the time Plaintiff was housed in the Armstrong Unit at ORV, both youth and staff would distribute dinner trays to youth. (Doc. 33, Ex. A (Report of Investigation) at 3369). On January 4, 2011, staff distributed dinner trays to youth. (Doc. 29, Barney Dep. 22:23–24 (Oct. 11, 2013)). The parties' version of what happened next varies greatly.

### A. *Defendant's Version of the Incident*

According to Defendants, that evening Defendant Barney attempted to give Plaintiff his dinner tray. (Doc. 29, Barney Dep. 22:23–24). Upon opening the door, Plaintiff slapped the tray from Defendant Barney and then attacked him. *Id.* at 22:24–23:7. Plaintiff had to be restrained by Defendant Barney and, eventually, Defendants Salyers and Gregory also assisted in restraining Plaintiff. *Id.* at 23:1–7.

During the alleged necessary restraint, Plaintiff received bumps and scrapes consistent with being restrained with the least amount of force necessary by the defendant youth specialists. (Doc. 33 Ex. A at 3436). The only injuries Plaintiff sustained were a few small abrasions with no bleeding. *Id.* Plaintiff indicated to medical staff that he was not in any pain. *Id.* Plaintiff neither alleged nor testified that he requested additional medical care other than the basic first aid that was rendered that evening.

### B. *Plaintiff's Version of the Incident*

Plaintiff Muhammad testified at his deposition that he was lying on his bed at dinner time when he looked up and saw Defendant Barney standing over him. (Doc. 32, Muhammad Dep. 14:1-4). Thereafter, Plaintiff asserts "before I could react or anything to sit up or grab my tray, [Barney] threw the tray in an upwards position to the other end of the room and jumped on me." (*Id.* 14:4-7). Barney then placed Muhammad in a headlock as Muhammad struggled to get free. (*Id.* 14:10-14). As Salyers and Gregory entered the room, Plaintiff alleges that Barney punched him in the face and then put him in a chokehold. (*Id.* 14:14-23). Thereafter, Plaintiff contends that Salyers and Gregory then began "hitting [Muhammad] in the head, body, [and] legs." (*Id.* 14:23-24).

2

As Muhammad tried to roll into the space between the wall and the bed to protect himself, he felt kicks to the back of his head, back and legs. (*Id.* at 15:9-15). Muhammad then heard one of the three Defendants state: "This is for Anderson[.] This is for Barbie." (*Id.* 15:18). According to Plaintiff, Anderson and Barbie were two staff members who were assaulted by youth at ORVJCF. (*Id.* 21:2-12).

During his alleged beating, Plaintiff recalls one of the Defendants say, "Break his arm[.] Break his arm[.] Grab his arm[.] Break his arm." (*Id.* 15:19-20). Afraid Defendants would do just that, Muhammad resisted giving his arms to them. (*Id.* 15:21-24). Eventually, Muhammad was cuffed. (*Id.* 16:7-8).

Muhammad felt dizzy and was hurting as a result of the beating. (*Id.* 16:21-22). In addition to suffering bumps, scrapes and abrasions on his head, he also experienced "[s]erious headaches, real pounding migraines" as a result of the attack. (*Id.* 24:3-9). Muhammad also suffered a "very bad pain" in his ribs. (*Id.* 25:17-18). Overall, Muhammad described his pain during the incident as "unbearable." (*Id.* 28:23).

Additionally, since the incident, Muhammad has had trouble sleeping: "I couldn't sleep some nights at all. I would wake up. I still do, I wake up in the middle of the night. It's hard to fall asleep." (*Id.* 30:3-6).

Defendants' now move for summary judgment.

**II.     Analysis**

**A.     Standard of Review**

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the

3

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (quoting *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615 (6th Cir. 2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323-24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire

4

record for material issues of fact. *Street*, 886 F.2d at 1479-80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Defendants motion for Summary Judgment

Defendants' maintain that Plaintiff's claims fail as a matter of law because he suffered *de minimis* injuries and he has offered no objective evidence that he was attacked. Defendants further contend that they are entitled to qualified immunity because there was no clear violation of a constitutional right. Plaintiff asks the Court to deny Defendants' motion, asserting that genuine issues of material fact exist thereby precluding summary judgment.

### C. Qualified Immunity

The Court must first resolve the issue of whether Defendants are entitled to qualified immunity for their actions in this case. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses

of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). *See also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury? *Saucier v. Katz,* 533 U.S. 194, 201 (2001). In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim. *Pearson,* 555 U.S. at 236-37.

Plaintiff bears the burden of showing that a right is clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). Defendant, however, bears the burden of showing that the challenged actions were objectively reasonable in light of the law

6

existing at the time. *Id.*

In determining whether a right is "clearly established" for purposes of the qualified immunity inquiry, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier,* 533 U.S. at 201). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir. 1993)).

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

**D.  Qualified Immunity analysis on Plaintiff's excessive force claim**

*1. Constitutional Violation*

To decide whether Plaintiff has presented evidence of a violation of his constitutional rights, the Court must first determine the source of the claimed right. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). Plaintiff's complaint alleges that Defendants subjected him to excessive force by repeatedly punching Plaintiff in the

head, face, and body. (Doc. 3 at ¶ 13). As a result of this alleged force, Plaintiff asserts that he sustained substantial contusions and lacerations to his face, head, arms, hands and front and back of his body. *Id.* at ¶14. Plaintiff's claims implicate the Eighth Amendment prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Farmer v. Brennan*, 511 U.S. 825 (1994).

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Sigley v. City of Parma Hts.*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Prisoners are protected from the use of excessive force by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The Eighth Amendment standard focuses on the official's "obdurancy and wantonness" and asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 319-21. The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir.1993) (citation omitted). In other words, [t]o ascertain whether excessive force was used under the Eighth Amendment, the court must determine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Such a claim has both an objective and a subjective component. The objective component requires that the pain be serious. The subjective

8

component requires that the offending, non-penal conduct be wanton. *Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010) (quoting *Watkins*, 1996 WL 499094, at *2 (citations omitted).

For purposes of summary judgment, the Court must accept the Plaintiff's version of events as true, and must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251-52. "What is necessary to establish an 'unnecessary and wanton infliction of pain [ ]' ... varies according to the nature of the alleged constitutional violation." *Hudson,* 503 U.S. at 5 (citing *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Where corrections officers are "confronted with a prison disturbance[,] officers" must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. *Id.* at 6.

In making the determination as to whether force was excessive under the circumstances, courts are guided by a number of factors, including the inmate's injuries. *Hudson,* 503 U.S. at 7–8. However, "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* at 7 (citation omitted). Other factors considered include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the

9

severity of a forceful response.' " *Id.; see also Richmond v. Settles,* 450 F. App'x 448, 453 (6th Cir.2011). As stated by the Sixth Circuit, "[i]n determining whether a prisoner's claim rises to this level [of unnecessary and wanton], the reason or motivation for the conduct, the type and excessiveness of the force used, and the extent of injury inflicted should be considered." *Parrish v. Johnson,* 800 F.2d 600, 604–605 (6th Cir.1986). Courts, however, have been advised that "[t]his analysis ... must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official's conduct from being subjected to unreasonable *post hoc* judicial second-guessing." *Id.* (citing *Whitley,* 475 U.S. at 321–22).

As recognized by the United States Supreme Court, "[d]espite the weight of these competing concerns, corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance." *Id.* at 5 (citing *Whitley,* 475 at 320). Accordingly, in determining whether officers used excessive force, courts consider "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6–7 (citations omitted).

Here, Defendants argue that the Plaintiff's Eighth Amendment claims fail as a matter of law because he did not suffer any severe injuries. *De minimis* injuries are those that need no more treatment "after the initial evaluation." *Richmond v. Settles*, 450 F. App'x 448, 453 (6th Cir. 2011). Even if the plaintiff is found to have *de minimis* injuries, the inquiry does not end there. *Hudson v. McMillan*, 503 U.S. 1, 8 (1992). *Hudson* explains that a lack of serious injury does not bar a plaintiff's claim and states

10

that there need not be "excessive use of force to show serious injury *in addition to* the unnecessary and wanton infliction of pain…" *Id.* at 10. Furthermore, "[w]hile the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell v. McKinney*, 759 F.3d 573, 580-581 (6th Cir.2014). *See Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

    The Supreme Court has stated that "the core judicial inquiry … is not whether a certain quantum of injury was sustained but rather whether the force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically cause harm…" *Wilkins*, 559 U.S. at 37. The crux of the dispute between the two parties here is whether Defendants Barney, Salyers, and Gregory acted maliciously and sadistically in their use of force against Plaintiff Muhammad. In this regard, there are two incongruent versions of what happened to Plaintiff. If Plaintiff Muhammad's version is accepted, then there would purportedly be a violation of a constitutional right. As detailed above, Plaintiff contends that Defendant Barney attacked him without provocation, hit in the face, and put him in a choke hold while Defendants Salyers and Gregory also attacked him. (Doc. 32, Muhammad dep. at 14-16). However, if the defendant's version is accepted, then there would be no violation of a constitutional right. According to Defendants, Plaintiff was the initial aggressor of the incident by slapping the food tray away from Defendant Barney. (Doc. 29, Barney Dep. 22:23–24). As a result of

Plaintiff's actions, he had to be reasonably restrained by Defendant Barney, Salyers and Gregory Barney. (Doc. 29, Dep. 23:1–7).

Such factual disputes preclude the Court from finding that Defendants are entitled to qualified immunity. *See Givens v. McClintic*, No. 1:11-CV-0558, 2013 WL 5944078, at *6 (S.D. Ohio Nov. 5, 2013) (denial of qualified immunity because factual disputes existed regarding the provocation of a physical dispute between an inmate and guards).

*2. Clearly Established Right*

The next step of our qualified immunity analysis is whether the alleged violations involved a constitutional right that was clearly established at the time of the alleged misconduct. The key determination is whether a defendant moving for summary judgment on qualified immunity grounds was on notice that his alleged actions were unconstitutional. *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir.2005). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers*, 319 F.3d at 848. "In an obvious case, general standards can clearly establish the answer, even without a body of relevant case law." *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir.2005) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)). "[T]here need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional*.*" *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (quoting *Hope v. Pelzer*, 536 U.S. 730,

12

741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741, 122 S.Ct. 2508. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

Here, a prisoner's right to be free from excessive force amounting to punishment is clearly established law. *Leary*, 528 F.3d at 443; *Phelps*, 286 F.3d at 300.

### III. Conclusion

In light of the foregoing, the undersigned finds that there are genuine disputes as to material facts regarding whether Plaintiff's actions created a threat to Defendants and whether Defendant Barney's initial use of force was reasonable under the circumstances. Since the issue of whether Plaintiff was the initial aggressor and/or his actions properly provoked the use of force applied by Defendants determines whether defendants' use of force was objectively reasonable, summary judgment on the basis of qualified immunity should be denied. *Rich*, 955 F.2d at 1095 (Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns.").

To deny the officers qualified immunity, we must deem their use of force under the circumstances objectively unreasonable. *Fettes v. Hendershot*, 375 F. App'x 528, 533 (6th Cir. 2010) Chappell, 585 F.3d at 907. Factual disputes preclude the Court from making such determination. Accordingly, it is herein **RECOMMENDED** that

13

Defendants' motion for summary judgment (Doc. 33) should be herein **DENIED** and this matter should proceed to trial.

                                         *s/Stephanie K. Bowman*
                                         Stephanie K. Bowman
                                         United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ABDUL MUHAMMAD,

    Plaintiff,

vs.

ADAM SALYERS, et al.,

    Defendants.

Case No. 1:12-cv-379

Judge Dlott
Magistrate Judge Bowman

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).